# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** | |
| JEFFREY SHAWN WHITE and ABIGAYLE JULIA WHITE, | **Bankruptcy Case No. 07-41080-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Jim Spinner, SERVICE SPINNER & GRAY, Pocatello, Idaho, Attorney for Trustee.

R. Sam Hopkins, Pocatello, Idaho, Trustee.

MEMORANDUM OF DECISION - 1

**Introduction**

In this decision, the Court must consider whether a chapter 7[1]

trustee's proposal to compromise an avoidance claim against a creditor is

fair and equitable, and thereby, in the best interests of the bankruptcy

estate.

Chapter 7 trustee, R. Sam Hopkins ("Trustee"), filed a motion to

approve a proposed settlement with DaimlerChrysler Financial Services

Americas LLC ("DCFS"), Docket No. 64. *See* Rule 9019. On July 8, 2008,

after notice to all parties in the bankruptcy case, the Court conducted a

hearing on Trustee's motion. Only Trustee and his counsel appeared at

that hearing; DCFS did not. Trustee's counsel briefly outlined the relevant

facts giving rise to the dispute with DCFS, and attempted to respond to the

Court's questions. At the conclusion of the hearing, the Court directed

Trustee to file a brief and an affidavit to support the motion, and took the

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 2

issues under advisement.

After considering the record, the arguments and submissions of

Trustee,[2] and the relevant legal authorities, this Memorandum constitutes

the Court's findings of fact and conclusions of law.  Rules 9014, 7052.

## Facts

The events giving rise to this contest and the proposed compromise,

while in some respects obscure, are apparently not disputed by the parties.


Debtor Jeffrey White purchased two vehicles from an auto dealer in

Idaho Falls.  The first, a 2007 Dodge R350 Pickup, was purchased on

August 22, 2007.  The second, a 2007 Dodge Durango, was purchased on

August 31, 2007.  Both purchases were financed through the dealership,

which in turn assigned the installment contracts to DCFS.  Each contract

---

[2] As noted, neither DCFS nor any other party in interest appeared at the hearing or filed a response to the Trustee's motion.  Trustee's brief indicates that while DCFS was invited to provide to Trustee's counsel any information or authorities it desired be submitted to the Court in support of the compromise, no submissions were received by counsel.  *See* Docket No. 78.

MEMORANDUM OF DECISION - 3

granted a security interest in the vehicle to secure Debtor's payment of the

balance due.  Debtor took possession of the vehicles on the same day that

the respective agreements were signed.

Thereafter, the dealer took steps to perfect the DCFS security

interests by submitting the certain documentation[3] to the Bonneville

County Assessor's Office.  In these documents, Debtor is listed as the

purchaser/owner,[4] DCFS is listed as the lien holder, and the correct vehicle

identification information is provided.

---

[3] The documents submitted included reports of sale and applications for certificates of title, certificates of origin, and odometer disclosure statements.  The applications are signed by an individual identified as the "Business Manager" for the dealer.

[4] On the applications for certificates of title and all purchase documents, Debtor's name is spelled "Jeffery White."  On his bankruptcy petition, Debtor's name is spelled "Jeffrey White."  On this record, it is unclear which spelling is correct.  Errors in properly documenting debtors' names have given rise to other recent avoidance actions in this District.  *See, e.g., Hopkins v. NMTC Inc. (In re Fuell)*, 07.4 I.B.C.R. 95 (Bankr. D. Idaho 2007).  However, Trustee has not raised this spelling error as an issue in this case.

MEMORANDUM OF DECISION - 4

An employee at the Assessor's Office[5] entered the information on these documents into the computer system and generated an electronic "Application for Certificate of Title" for each vehicle.[6]  These applications identify August 30, 2007 and September 20, 2007 as the "recorded date" for the pickup and the Durango, respectively.[7]  *See* Docket No. 79 at Attachment E.  Due to an apparent keystroke error, however, the address

---

[5]  Under Idaho Code § 49-205(1), Idaho's county assessors are designated as agents of the Idaho Transportation Department for purposes of processing motor vehicle records; their various duties are prescribed by title 49 of the Idaho Code.

[6]  Several hard copy versions of these applications were submitted in the record to the Court.  Some are labeled "Motor Vehicle Copy," while some are labeled "Applicant Copy."  *Compare* Docket No. 79 at Attachment E *with* Docket No. 79 at Attachment I.  Apart from these labels, the information contained in the documents appears to be identical.  It is unclear whether paper copies of these documents were issued and filed at the time the information was entered into the computer system, or whether the information was stored electronically only and these hard copies were generated later, upon Trustee's request for title and registration reports.

[7]  The record is unclear why the Assessor's Office selected these dates as the "recorded" dates.  However, these are the dates that appear in handwritten notations on the face of the original applications for title submitted to the Assessor's Office by the dealer.  The Court therefore speculates that they represent the dates the paperwork was delivered to the Assessor by the dealer.

MEMORANDUM OF DECISION - 5

recorded for DCFS in each of these documents was incorrect.[8]  These errors

apparently went undetected during the examination and title issuance

process.  In due course, "paperless" electronic records of title and lien

filings were generated by the Idaho Transportation Department and

issued to DCFS.[9]

      In November 2007, DCFS apparently sought to correct the errors

concerning its mailing address which existed in the Idaho Transportation

Department's electronic records.  It is unclear precisely how or when DCFS

---

[8]  In the documents submitted to the Assessor's Office, DCFS lists its
address as P.O. Box. 997536, Sacramento, CA 95899.  However, the Applications
for Certificates of Title generated by the Assessor's Office list the address of
DCFS as P.O. Box 997533 for the pickup, and P.O. Box 997530 for the Durango.
*Compare* Docket No. 79 at Attachment I, *with* Docket No. 79 at Attachment E.

[9]  Idaho Code § 49-505 allows the Idaho Transportation Department to
create a paperless electronic record of title and lien filing in lieu of issuing a
paper certificate of title, where the lien holder and the Idaho Transportation
Department so agree in writing.  There is no such agreement in the record, but
the Court presumes one exists, since the parties concur that no paper certificate
of title was ever generated or issued by the Idaho Transportation Department.

MEMORANDUM OF DECISION - 6

made this attempt.[10]  What is clear, however, is that the electronic record of

title for the pickup was eventually changed by the department  to reflect

DCFS's correct address, and that in the process, the "recorded" and

"issued" dates of DCFS's lien appearing in the electronic records were

changed to November 5, 2007.  A similar change occurred in the electronic

records for the Durango, except that the "recorded" and "issued" dates of

that lien were changed to November 9, 2007.

This change in the "recorded" date is key to the parties' dispute,

because on December 22, 2007, Debtors Jeffrey and Abigayle White filed a

chapter 7 bankruptcy petition.  Trustee was appointed, and thereafter

ordered motor vehicle title and registration reports from the Idaho

Transportation Department which revealed DCFS's liens on Debtor's

_____

[10]  In a letter to the dealership which sold the vehicles, Daryl Marler,
Dealer Operations Program Supervisor for the Idaho Transportation Department,
explained that DCFS entered the corrected address "electronically with a
transaction code of 'LI' which signified a new lien to the electronic title system.  If
the entry was intended to correct the address of the lien holder it was entered
incorrectly by [DCFS].  It should have been entered with a different code which
would not have changed the title issuance date."  Docket No. 79 at Attachment J.

MEMORANDUM OF DECISION - 7

pickup and Durango.  As explained above, those reports listed the lien on

the pickup as being recorded on November 5, 2007, and the lien on the

Durango as being recorded on November 9, 2007.

On March 11, 2008, Trustee initiated an adversary proceeding[11]

against DCFS in which he sought to avoid the creditor's allegedly tardily-

perfected security interests in the vehicles under § 547(b) as preferences.

Docket No. 44.  DCFS filed an answer in which it denied the security

interests were avoidable.  Adv. Docket No. 7.  During the pendency of this

action, Trustee took possession of the pickup and the Durango and sold

them at auction, receiving a total, after payment of sale costs, of

approximately $36,800 in sale proceeds.[12]

To resolve the dispute with DCFS, Trustee proposes to pay that

---

[11]  *See* Adversary Proceeding No. 08-8019.

[12]  The combined gross sale for the vehicles was $42,500.  The Court-
approved compensation and expenses for Trustee's auctioneer amounted to
$5,690.05.  *See* Docket No. 76.  Thus, the net sale proceeds generated from
liquidating the vehicles was $36,809.95.

MEMORANDUM OF DECISION - 8

creditor $15,000 from the proceeds of the sale.  DCFS agrees, in turn, that

its security interests may be deemed avoided.  Under this deal, if

approved, the balance of the sale proceeds would be available to distribute

to other unsecured creditors.[13]

## Discussion

## I.

In the context of approving compromises, the Court occupies the

important role of ensuring that settlements between bankruptcy estates

and third parties are "fair and equitable."  *Martin v. Kane (In re A & C

Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *Goodwin v. Mickey Thompson

Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.)*, 292 B.R. 415,

420 (9th Cir. B.A.P. 2003); *In re Marples*, 266 B.R. 202, 206 (Bankr. D. Idaho

---

[13]  Neither the parties' stipulation in the adversary proceeding, nor
Trustee's motion for approval of the compromise, provide that, in consideration
of the settlement and receipt of $15,000, DCFS will waive its claim as an *unsecured*
creditor in the bankruptcy case.  Based upon other information in the Court's
record, it appears DCFS's total claim based upon these contracts may exceed
$75,038.11.  *See* Docket No. 23.

MEMORANDUM OF DECISION - 9

2001).  To fulfill this responsibility, bankruptcy courts have "great latitude"

in deciding whether to approve compromises.  *Woodson v. Fireman's Fund*

*Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  In determining

the fairness, reasonableness and adequacy of a proposed settlement, the

Court must consider:

> (a) the probability of success by the trustee in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection of any judgment recovered by the trustee; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Props.*, 784 F.2d at 1381.

In proposing the compromise, Trustee has the burden of

"persuading the bankruptcy court that the compromise is fair and

equitable and should be approved."  *Id.*  Elaborating on this point, this

Court has explained that to satisfy its burden, a trustee must "do more

than parrot the [*A & C Properties*] standards or announce that they are

satisfied. . . .  [Trustees] must present a cogent and detailed factual

MEMORANDUM OF DECISION - 10

explanation, discussing how the factors apply to the specific litigation and proposed settlement." *In re Olson*, 06.3 I.B.C.R. 63, 64, n. 8 (Bankr. D. Idaho 2006). While deference to a trustee's decision in compromising disputes is often appropriate, a trustee's evaluation of the merits and wisdom of settlement is, by itself, not determinative. Simply put, the Court is "not permitted to act as a mere rubber stamp" but, rather, must make an independent determination that the compromise is fair and equitable. *In re W. Pointe Props., L.P.,* 249 B.R. 273, 281 (Bankr. E.D. Tenn. 2000); *see also In re Olson,* 06.3 I.B.C.R. at 64, n. 8.

The Court's role is to either approve or disapprove the suggested compromise. It need not conduct a mini-trial on the merits of any of the claims being asserted, or the claims that may be asserted in the future, that are to be resolved through compromise. *See*, *e.g.*, *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. B.A.P. 1997). "When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues." *Id.* Accordingly, the Court here

MEMORANDUM OF DECISION - 11

has reviewed the issues and circumstances surrounding this proposed compromise as presented by Trustee as well as those that are evident from the record in determining whether Trustee has satisfied his burden to show that the DCFS settlement is "fair and equitable." [14]

For the reasons that follow, the Court concludes that Trustee has not adequately shown that this compromise is fair and equitable.

## II.

## A.

In reviewing this compromise, the Court first considers the Trustee's probability of success in his challenge of the DCFS security interests in this case.

Under § 547(b) and § 550(a), in most instances, a preference is a

---

[14] Trustee has given the Court a basic explanation of his theories for asserting that the security interests held by DCFS are avoidable preferences. Because DCFS has not appeared in connection with the motion, nor otherwise submitted any arguments, the Court was left to do its best to presume what defenses the creditor could advance in response to Trustee's claims.

MEMORANDUM OF DECISION - 12

transfer of property by the debtor to a creditor on account of an antecedent

made within the ninety days before a bankruptcy filing, which a trustee

may recover for redistribution to all of the debtor's creditors.  As

previously noted, the date listed in the Idaho Transportation Department's

electronic records as the "recorded" date is key to the parties' dispute in

this action because it is that date which determines  when the transfer of a

security interest in a motor vehicle is deemed to have been made for

purposes of § 547.  Under the Code, if DCFS's liens were perfected within

30 days of the dates the vehicles were purchased, then the transfer of those

liens will be deemed to have occurred on the purchase dates.  *See* 11 U.S.C.

§ 547(e)(2)(A).  In this instance, both vehicles were purchased more than 90

days before Debtors filed their bankruptcy petition, and so if the security

interests were deemed to have been granted to DCFS on the purchase

dates, they can not be avoided as preferences.   However, the Code

provides that if the DCFS liens were perfected under state law *outside* of

that 30-day grace period, the transfers are deemed to have been made on

MEMORANDUM OF DECISION - 13

the perfection dates.  *See* 11 U.S.C. § 547(e)(2)(B).  In that event, the DCFS

liens are vulnerable to Trustee's preference claim.

     The transfer of a lien on a debtor's personal property "is perfected

when a creditor on a simple contract cannot acquire a judicial lien that is

superior to the interest of the transferee."  11 U.S.C. § 547(e)(1)(B).  State

law governs when this occurs.  *Fitzgerald v. First Sec. Bank of Idaho (In re*

*Carson)*, 97.1 I.B.C.R. 8, 9 (Bankr. D. Idaho 1997).  The Idaho statute

governing perfection of motor vehicle liens provides, in pertinent part:

> When the department is satisfied as to the
> genuineness and regularity of the documents
> submitted, it shall issue a new certificate of title
> or create a paperless electronic record of the title
> and lien filing . . . .  The filing of a lien or
> encumbrance and the notation of it shall be a
> condition of perfection and shall constitute
> constructive notice of the lien or encumbrance
> and its contents to creditors and subsequent
> purchasers and encumbrancers.  *All liens or*
> *encumbrances so filed with the department shall be*
> *perfected and take priority according to the order in*
> *which the same are noted upon the certificate of title or*
> *entered into the electronic records of the department.*

MEMORANDUM OF DECISION - 14

Idaho Code § 49-510(3) (emphasis added).

Applying this statute, this Court has in prior cases explained that "a

security interest is deemed perfected according to the date noted by the

State on the title certificate."[15]  *Fitzgerald v. First Sec. Bank of Idaho (In re*

*Walker)*, 161 B.R. 484, 491 (Bankr. D. Idaho 1993).  Moreover, in analyzing

perfection issues, this Court has consistently declined to allow

administrative errors by governmental agencies to "alter the operation of

the statutes governing motor vehicle titles and security interests."  *In re*

*Carson*, 97.1 I.B.C.R. at 10; *see also, In re Walker*, 161 B.R. at 491; *In re Francke*,

82 I.B.C.R. 201, 202 (Bankr. D. Idaho 1982).  For example, the Court has

observed that:

The Assessors and the Department of Motor

---

[15]  Here, no paper certificates of title were ever issued, and thus, no actual "notation" of the DCFS liens by the State occurred.  However, Idaho Code § 49-517 provides, "[i]n the absence of a certificate of title, the computer records of the department shall be the original title document."  On the date Debtors filed their bankruptcy petition, the Transportation Department's computer records listed the recorded dates of the liens for the pickup and Durango as November 5, 2007 and November 9, 2007, respectively.

MEMORANDUM OF DECISION - 15

Vehicles have the affirmative duty to receive and [process applications for perfection of liens]. If errors are made by those agencies, the [creditor] must look to them to correct their errors and deficiencies.

*In re Carson*, 97.1 I.B.C.R. at 10 (quoting *In re Francke*, 82 I.B.C.R. at 202).

After acknowledging the case law, Trustee concedes that it would be difficult for DCFS to prevail, concluding that he has "better odds" of prevailing in the preference litigation than the Defendant DCFS does. Docket No. 78. The Court concurs: given these facts, Trustee will likely be able to avoid the DCFS security interests. Thus, this factor weighs against approval of the compromise.

### B.

Consideration of the other *A & C Properties* factors also demonstrates that Trustee's proposal to pay DCFS $15,000 is far too generous.

The second factor focuses on the difficulties, if any, to be encountered by Trustee in collection of any judgment he may recover against DCFS. But, similar to the situation presented in *Marples*, this "is

MEMORANDUM OF DECISION - 16

not a situation where a judgment in favor of the estate is of suspect

collectability." *In re Marples*, 01.3 I.B.C.R. at 118.  The pickup and the

Durango have been sold and Trustee is holding the cash sale proceeds in

his trust account pending the outcome of the DCFS litigation.  In other

words, if Trustee prevails, no collection efforts are required.

As to the third factor, this is not a particularly complex case.  As

explained above, the preference case law concerning tardily-perfected liens

is well-established in this District and favors Trustee's position.  While the

scenario presented here differs slightly from the typical case, the Court is

not persuaded that any factual deviations add in any significant fashion to

the complexity of the litigation.  Indeed, most, if not all, of the material

facts are undisputed, as is apparent from the transaction documentation

and public records already submitted to the Court.  And if contested facts

remain, Trustee's task would be limited to offering limited testimonial

evidence.  *See In re Marples*, 01.3 I.B.C.R. at 118 (finding that the third *A &*

*C Properties* factor did not support compromise where the underlying facts

MEMORANDUM OF DECISION - 17

were uncontested and minimal trial time would be required to adequately address remaining issues).

There would also be little delay in submitting the matter to the Court for a resolution on the merits. A trial, assuming one is necessary, could be scheduled to occur within a few weeks. Moreover, the Court presumes that much of the legal expense in prosecuting this action has already been incurred by the estate. Any remaining issues could probably be resolved by the Court, either via motion or trial, without significant additional expense.[16]

Finally, in weighing the propriety of a compromise, the Court is instructed to consider the interests of creditors. As this Court has explained, this analysis "should reflect not only the desire of creditors to obtain the maximum possible recovery, but also their competing desire that recovery occur in the least amount of time." *Id.*

---

[16] In this regard, the Court doubts that the costs of submitting the legal issues on the merits to the Court would have substantially exceeded those incurred by Trustee in urging Court approval of this compromise.

MEMORANDUM OF DECISION - 18

Here, Trustee explains in his brief that if the settlement is approved, the estate is assured of having about $22,000 in sale proceeds to distribute to unsecured creditors in the near future. Docket No. 78. If the compromise is not approved, Trustee points out that, even if he is successful in the litigation, DCFS is entitled to an unsecured claim. He asserts that with such a large claim, the return to other unsecured creditors would be severely diluted.

As noted above, there is nothing in the parties' stipulation requiring DCFS to withdraw its unsecured claim, and thus even if the compromise is approved, DCFS will apparently share in any distributions to be made by Trustee, albeit in a reduced amount. Trustee does not offer any concrete figures to substantiate his assertion that approval of the settlement will significantly enhance the treatment of individual creditors. Absent a more precise showing, the Court is reluctant to conclude the compromise will substantially increase dividends to the other creditors.

There is always the specter of delay attendant to further litigation,

MEMORANDUM OF DECISION - 19

including through appeal.  While appreciating creditors' presumed desire

to be paid promptly in this case, the Court must pause at the extent of the

concession in favor of DCFS proposed by Trustee.  Under the terms of the

proposed settlement, DCFS would recover approximately 40% of the net

sale proceeds in satisfaction of security interests which, under the statutes

and decisions, are likely avoidable by a trustee in bankruptcy.  While

expeditious administration of the estate is Trustee's duty, the Code

sanctions speed only if it is "compatible with the best interests of parties in

interest[.]"  11 U.S.C. § 704(a)(1).

## Conclusion

The Court has recently cautioned trustees about the need to

approach obtaining approval of compromises "carefully and

comprehensively."  *In re Arkoosh Produce, Inc.*, 03.3 I.B.C.R. 149, 155 (Bankr.

D. Idaho 2003).  Here, Trustee has not shown that the *A & C Properties*

factors favor approval of his deal with DCFS.  As a result, the Court

declines to find that the proposed compromise is fair and equitable, and

MEMORANDUM OF DECISION - 20

Trustee's motion for approval of compromise will be denied by separate

order.

Dated: August 19, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 21